UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL E. MILLER,
        Petitioner/Cross-Respondent,

-v-

UBS FINANCIAL SERVICES INC. and
UBS CREDIT CORP.,
        Respondents/Cross-Petitioners.

18-CV-8415 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Petitioner Michael E. Miller brings this petition to vacate an arbitration award in favor of Respondents UBS Financial Services Inc. and UBS Credit Corp. (collectively "UBS"). Miller claims that the award is unsound because two of the three arbitrators on the panel that issued the award failed to properly disclose relevant information during the arbitrator selection process. UBS disagrees and seeks confirmation of the award. For the reasons that follow, Miller's application is denied, and the arbitration award is confirmed.

**I.    Background**

      Petitioner Miller is a former employee of Respondent UBS, having worked as a financial advisor in a UBS branch office from February 11, 2010 to August 31, 2016. (Dkt. No. 6-2 ¶ 5.) According to UBS, Miller received six loans from UBS during this period, for a total of $301,052.00. (Dkt. No. 6-2 ¶ 10.) In connection with his employment by UBS, and in the promissory notes and agreements executed in connection with each loan, Miller agreed to submit any disputes with UBS to binding arbitration. (Dkt. No. 6-2 ¶¶ 7–8; *see* Dkt. No. 6 ¶¶ 5, 17; Dkt. No. 18 ¶¶ 8–9.) Additionally, the promissory notes provided that the loans would become immediately due if Miller's employment was terminated for any reason. (Dkt. No. 6-2 ¶¶ 13, 20, 25, 30, 35, 40; *see also, e.g.*, Dkt. No. 18-2 at 3.) On August 31, 2016, Miller voluntarily

1

resigned from UBS, with an outstanding total principal balance of $104,301.77 due on the six loans.  (Dkt. No. 6-2 ¶ 50.)

On December 19, 2016, UBS filed a Statement of Claim against Miller in the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution Forum in connection with the outstanding loan balance.  (*See* Dkt. No. 6-2.)  UBS asserted claims for breach of contract of the six promissory notes and a claim of unjust enrichment.  (Dkt. No. 6-2 ¶¶ 53–92.)  Miller filed an answer, contending that the promissory notes were "secured from [him] by UBS unlawfully, under false representations and promises, and under duress," and that UBS redefined Miller's anticipated bonuses as loans without his informed consent.  (Dkt. No. 6-4 at 3–4.)  Miller also interposed a counterclaim against UBS for unjust enrichment.  (Dkt. No. 6-4 at 6.)

In March 2017, Miller and UBS began the process of selecting the three arbitrators that would oversee their dispute.  (Dkt. No. 6 ¶ 6.)  Under the FINRA rules governing their arbitration proceedings, one arbitrator must be chosen from each of three categories—public arbitrators, non-public arbitrators, and public arbitrator chairpersons.  (Dkt. No. 6 ¶ 7.)  The parties were provided a list of potential arbitrators in each category (Dkt. No. 6 ¶ 7), along with Arbitrator Disclosure Reports that provided background information and a list of potential conflicts for each potential arbitrator (Dkt. No. 6 ¶ 28; *see* Dkt. No. 6-6 at 16–22; Dkt. No. 6-7 at 24–26; Dkt. No. 6-8 at 19–22).  From this list, the parties proposed to strike some arbitrators and ranked their preferences among those remaining.  (Dkt. No. 6 ¶¶ 7, 29; *see* Dkt. No. 6-5 at 2.)  FINRA then consulted the parties' preferences and appointed a panel of three arbitrators to hear the case.  (Dkt. No. 6 ¶¶ 8, 29–30; *see* Dkt. No. 6-5 at 3.)  At that point, FINRA sent the parties an Oath of Arbitrator form with additional self-reported information from each of the selected

arbitrators (Dkt. No. 6 ¶ 39; *see, e.g.*, Dkt. No. 6-6 at 3–15), and informed the parties about their continuing ability to object to the arbitrators selected (Dkt. No. 6-5 at 4).

The arbitration hearing took place from July 24 to July 26, 2018. (Dkt. No. 6-1 at 5.) On August 17, 2018, the panel unanimously rejected Miller's counterclaim and found in favor of UBS, awarding UBS $104,621.00 in compensatory damages, $3,285.00 in costs, and $58,718.00 in attorney's fees. (Dkt. No. 6-1 at 4.)

Miller initiated this action on September 14, 2018, filing a petition to vacate the arbitration award. (Dkt. Nos. 1 & 7.) UBS opposed the petition to vacate (Dkt. No. 17), and filed a cross-petition to confirm the arbitration award (Dkt. No. 19).

## II.     Legal Standard

The Federal Arbitration Act ("FAA") permits vacatur of an arbitration award under four narrow circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

"On a motion to vacate an arbitration award under the [FAA], judicial review of the award is 'severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Kent Bldg. Servs., LLC v. Kessler*, No. 17 Civ. 3509, 2018 WL 1322226, at *2 (S.D.N.Y. Mar. 14, 2018) (internal

3

quotation marks omitted) (quoting *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012)).

### III. Discussion

#### A. Petition to Vacate Arbitration Award

Miller's petition to vacate the arbitration award is premised on the alleged failure of two arbitrators to fully disclose pertinent information prior to the arbitration hearing. Specifically, Miller identifies three alleged deficiencies in the arbitrators' disclosures: (i) the failure of non-public arbitrator April C. Teveris to disclose in the Arbitrator Disclosure Report that she "represented investors as part of her solo law practice" (Dkt. No. 6 ¶ 37); (ii) the failure of public arbitrator Steven R. Rolnick to disclose, in the Arbitrator Disclosure Report or Oath Form, "his status as a defendant in a suit filed in Federal court" (Dkt. No. 6 ¶ 44); and (iii) the failure of Rolnick to fully explain a "yes" answer on his Oath form in response to a question about whether he or family members owned "securities involved in the underlying case" (Dkt. No. 6 ¶ 45 (emphasis omitted)).

In light of these allegedly deficient disclosures, Miller contends that the arbitration award should be vacated on two grounds. First, he argues that the arbitrators' deficient disclosures violated FINRA disclosure rules, and thus the arbitrators were "not appointed in accordance with the procedures provided in the parties['] agreement and the FINRA Rules," and in reaching a decision the arbitrators necessarily "exceeded their powers" under FAA § 10(a)(4). (Dkt. No. 6 ¶¶ 24, 46–47.) Second, Miller invokes FAA § 10(a)(2) (Dkt. No. 6 at 7), under which an arbitration award can be vacated "where there was evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(a)(2).

4

1.     **Vacatur Under FAA § 10(a)(4)**

FAA § 10(a)(4) provides that a court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Miller argues that, because two arbitrators in the underlying proceeding failed to make adequate disclosures in violation of FINRA disclosure rules, they "were not appointed in accordance with the procedures provided in the parties['] agreement and the FINRA Rules," and the issuance of the arbitration award was thus in excess of their powers. (Dkt. No. 6 ¶ 47.)[1]

FINRA Rule 13408 governs the disclosures required of arbitrators in advance of arbitration. Rule 13408 provides that "[e]ach potential arbitrator must make a reasonable effort to learn of, and must disclose to the Director, any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding." FINRA

---

[1] As a threshold matter, UBS contends that FAA § 10(a)(4) cannot be invoked to challenge an arbitration on the basis of deficient disclosures by arbitrators. (Dkt. No. 17 at 6–8; Dkt. No. 26 at 5–6.) The Court notes that Miller's proposed application of § 10(a)(4) is beyond the scope of the standard formulation in this Circuit of the test for whether arbitrators have exceeded their powers. *See Envtl. Chem. Corp. v. Coastal Envtl. Grp., Inc.*, No. 18 Civ. 3082, 2018 WL 4378439, at *9 (S.D.N.Y. Sept. 14, 2018) ("[A]n arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." (alteration in original) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011))). And the Second Circuit has "consistently accorded the narrowest of readings" to § 10(a)(4). *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (citation omitted). Moreover, Miller does not cite any case from this Circuit in which a court has vacated an arbitration award under § 10(a)(4) on the basis of failure to comply with disclosure rules. Rather, the issue of inadequate arbitrator disclosures generally arises as a basis for vacating an award under § 10(a)(2). *See, e.g.*, *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011); *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 136–39 (2d Cir. 2007)

However, the Court ultimately need not decide whether an arbitrator's failure to comply with FINRA disclosure rules can serve as a basis for vacating an arbitration award under § 10(a)(4). Assuming that such a theory could support vacatur under certain circumstances, the Court nonetheless declines to vacate the arbitration award here for the reasons stated below.

Rule 13408(a), *Financial Industry Regulatory Authority*, http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4243 (last accessed Apr. 19, 2019).  The Rule goes on to enumerate several circumstances that might impede an objective determination, such as having an interest in the outcome of the arbitration or a relationship with any of the parties.  *See* FINRA Rule 13408(a)(1)–(4).

Miller contends that three instances of deficient disclosures by Arbitrators Rolnick and Teveris violated Rule 13408.  (Dkt. No. 6 at 7 & ¶¶ 46–47; Dkt. No. 23 ¶¶ 8–9.)  The Court first addresses Teveris's representation of investors and Rolnick's status as a defendant in a federal lawsuit, then considers Rolnick's disclosure about securities ownership.

First, Miller alleges that Arbitrator Teveris failed to disclose her representation of an investor before FINRA in an unrelated securities matter in her initial Arbitrator Disclosure Report, and then failed to offer sufficient detail about the representation in the Oath form.  (Dkt. No. 6 ¶¶ 42–43.)  Second, Miller alleges that Arbitrator Rolnick failed to disclose that he was a defendant in an unrelated federal lawsuit in either his initial Arbitrator Disclosure Report or his Oath Form.  (Dkt. No. 6 ¶ 44.)  UBS responds that these instances of allegedly deficient disclosures do not constitute violations of Rule 13408.  (Dkt. No. 17 at 9–10.)  The Court agrees.

As the petitioner here, Miller "'bears the heavy burden' of proving the existence of grounds for vacatur."  *Rai v. Barclays Capital Inc.*, 739 F. Supp. 2d 364, 370 (S.D.N.Y. 2010) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)).  Yet Miller never explains *how* the representation of an investor before FINRA, or being a defendant in a lawsuit, constitute "circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding," FINRA Rule 13408(a),

6

where the representation and lawsuit are entirely unrelated to the parties or subject matter involved in this arbitration. And such an explanation is not readily apparent to the Court.

Miller briefly contends that this information is "material" (Dkt. No. 6 ¶ 46), and that he would have ranked potential arbitrators differently had been in possession of it (Dkt. No. 23 ¶ 8). But the usefulness of undisclosed information to a party is not the applicable standard for determining whether there has been a violation of Rule 13408. *Cf. STMicroelectronics, N.V.*, 648 F.3d at 77 ("A party might like to know [such] information when shopping for arbitrators, but its absence cannot form a ground for vacating an arbitral award."). As to these first two allegedly deficient disclosures, then, the Court concludes that Miller has failed to demonstrate a violation of Rule 13408, and thus failed to establish on these grounds that the arbitrators acted in excess of their powers in issuing the arbitration award.

The third and final disclosure involves Arbitrator Rolnick's potential interest in UBS securities. The Oath of Arbitrator form, which is given to the parties for each arbitrator after the panel is selected, contains an Arbitrator Disclosure Checklist. (*See, e.g.*, Dkt. No. 6-6 at 5.) In his checklist, Rolnick answered "yes" to the question: "Have you, your spouse, or an immediate family member invested in or held any of the securities that are the subject of the arbitration."[2] (Dkt. No. 6-6 at 7.) Miller argues that Arbitrator Rolnick's failure to explain this answer in

---

[2] UBS argues that that this answer by Rolnick was an "over-disclosure" and "has little or no relevance to an employment arbitration" because the question was intended to reveal conflicts of interest in investment-related arbitration. (Dkt. No. 17 at 14 n.2; *see also* Dkt. No. 26 at 3 n.2.) The Court recognizes that the meaning of Rolnick's disclosure is not entirely clear because there were no "securities that [we]re the subject of the arbitration" between Miller and UBS. (Dkt. No. 6-6 at 7.) But presumably Rolnick intended to indicate that he or a family member, in past or at present, owned some UBS-related securities. And even in an employment arbitration, an arbitrator's ownership of securities in a party could be subject to disclosure under FINRA Rule 13408 or relevant to an arbitrator's impartiality.

detail "was prejudicial" because Miller "had no way to know if Mr. Rolnick, or his family held stock in UBS."  (Dkt. No. 6 ¶ 45.)

If Rolnick or a family member indeed held UBS securities during the course of the arbitration, then there might exist the kind of relationship or interest in the outcome of the proceedings that must be disclosed under Rule 13408(a).  But, as UBS notes (Dkt. No. 17 at 9), Rolnick disclosed this potential interest on his Oath form, and it is not clear that Rule 13408 mandates a particular level of detailed explanation in the disclosure.[3]

Moreover, even if Rule 13408 could be read to require a degree of disclosure greater than the fact of a potential conflict, by failing to object to Rolnick's incomplete disclosure before the arbitration hearing, Miller waived any challenge to Rolnick's membership on the arbitration panel on this basis.  Courts in this Circuit have "declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship, or could have learned of the relationship 'just as easily before or during the arbitration rather than after it lost its case.'"  *Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004) (citations omitted). Under this doctrine of waiver applied to challenges to arbitration awards on the basis of inadequate disclosures by arbitrators, "[w]here a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground.  His silence constitutes a waiver of the objection." *LGC Holdings, Inc. v. Julius Klein Diamonds, LLC*, 238 F. Supp. 3d 452, 467 (S.D.N.Y. 2017) (alteration in original) (quoting *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev.*

---

[3] UBS also briefly contends that Miller abandoned this particular disclosure as a basis for vacatur by failing to oppose arguments against it in his reply brief.  (Dkt. No. 23 ¶¶ 8–9, 11; Dkt. No. 26 at 3 n.2.)  The Court need not address whether Miller abandoned his argument for vacatur based on this third disclosure, however, because in any event the challenge was waived by virtue of not having been raised in a timely manner during arbitration proceedings.

8

*& Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998)).[4]  To allow otherwise, "permitting a party to oppose confirmation of an award based on a claim that it did not assert—but easily could have asserted—at the arbitration, would offend the general principle that 'a party cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.'" *Buhannic v. Tradingscreen, Inc.*, No. 17 Civ. 07993, 2018 WL 3611985, at *4 (S.D.N.Y. July 27, 2018) (quoting *Mandarin Oriental Mgmt., (USA) Inc. v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, No. 13 Civ. 3984, 2014 WL 345211, at *5 (S.D.N.Y. Jan. 31, 2014)), *appeal filed*, No. 18-2274 (2d Cir. Aug. 2, 2018).

Here, Miller was informed by FINRA, when the arbitration panel was announced on March 27, 2017, that he had "the right to challenge arbitrators for cause" after their appointment but before the hearing.  (Dkt. No. 6-5 at 4.)  FINRA stated that it would "grant a party's request to remove an arbitrator if it is reasonable to infer that the arbitrator is biased, lacks impartiality, or has a direct or indirect interest in the outcome of the arbitration."  (*Id.*)  The affirmative answer from Arbitrator Rolnick about investment in UBS securities was disclosed to Miller

---

[4]  This waiver doctrine related to arbitrator disclosures is normally applied to petitions to vacate under FAA § 10(a)(2).  *See, e.g.*, *Lucent Techs.*, 379 F.3d at 28; *DDR Constr. Servs., Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 16 Civ. 4454, 2017 WL 4334085, at *10–11 (E.D.N.Y. July 11, 2017).  But the manner in which this doctrine has been applied seems attributable to the fact that petitions to vacate for deficient disclosures are generally brought under FAA § 10(a)(2), and not FAA § 10(a)(4).  (*See supra* note 1.)  And the Court sees no reason to distinguish between these two provisions with respect to the applicability of this waiver doctrine.  *See Konz v. Morgan Stanley Smith Barney, LLC*, No. 18 Civ. 5181, 2018 WL 5818108, at *4 (S.D.N.Y. Oct. 17, 2018) (extending this waiver principle normally applied under § 10(a)(2) to a vacatur argument under § 10(a)(4)); *cf. LGC Holdings, Inc.*, 238 F. Supp. 3d at 473 (holding that an argument for vacatur under § 10(a)(4) was waived where the argument could have been raised during arbitration but was only raised for the first time after the arbitration award was issued).  The Court therefore applies the arbitrator-disclosure waiver doctrine equally to any petition to vacate on grounds of deficient disclosure under FAA § 10(a).

around May 11, 2017.  (Dkt. No. 18 ¶ 19; Dkt. No. 6-6 at 4.)  The hearing itself was held from July 24 to July 26, 2018.  (Dkt. No. 6-1 at 5.)  From the time Miller received Rolnick's disclosure to the time the hearing was held, he attended four pre-hearing conferences with arbitrators present.  (Dkt. No. 6-1 at 5.)  Yet Miller never brought up Rolnick's potential conflict of interest to seek further information or request that he be removed from the panel.  (*See* Dkt. No. 18 ¶¶ 20–21, 24.)

Arbitrator Rolnick's affirmative answer on his disclosure checklist was sufficient to put Miller on notice of "facts possibly indicating bias or partiality on the part of an arbitrator."  *LGC Holdings*, 238 F. Supp. 3d at 467.  Miller's decision to forgo the issue during arbitration proceedings thus "constitutes a waiver of the objection," *id.*, and it cannot serve as a ground for vacatur of the arbitration award.

For all three of the allegedly deficient disclosures Miller identified, then, he has failed to satisfy "'the heavy burden' of proving the existence of grounds for vacatur" of an award in excess of the arbitrators' powers under § 10(a)(4).  *Rai*, 739 F. Supp. 2d at 370 (quoting *Duferco*, 333 F.3d at 388).

### 2.    Vacatur Under FAA § 10(a)(2)

Miller also briefly invokes FAA § 10(a)(2) as another basis for vacatur, premised on the same three allegedly deficient disclosures by Arbitrators Teveris and Rolnick.  (Dkt. No. 6 at 7.)  A court can vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them."  9 U.S.C. § 10(a)(2).

"In this Circuit, 'evident partiality within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'"  *Scandinavian Reinsurance Co.*, 668 F.3d at 72 (quoting *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefits Funds*, 748 F.2d 79, 84 (2d Cir. 1984)).  Under "the

10

standard for obtaining vacatur based upon nondisclosure" pursuant to § 10(a)(2), "where '[a]n arbitrator . . . knows of a material relationship with a party' but fails to disclose it, '[a] reasonable person would have to conclude that [the] arbitrator who failed to disclose under such circumstances was partial to one side.'" *Scandinavian Reinsurance Co.*, 668 F.3d at 73 (alterations in original) (quoting *Applied Indus. Materials Corp.*, 492 F.3d at 137).  However, "where an undisclosed matter is not suggestive of bias, vacatur based upon that nondisclosure cannot be warranted under an evident-partiality theory."  *Id.*

Here, Arbitrator Teveris's representation of an investor in an unrelated arbitration and Arbitrator Rolnick's involvement in an unrelated federal lawsuit are in no way suggestive that the arbitrators were predisposed to favor UBS over Miller.  As such, any inadequate disclosures in relation to those two instances cannot serve as a ground for vacatur under § 10(a)(2).

Arbitrator Rolnick's affirmative answer regarding potential ownership of UBS securities might theoretically present a closer question.  *See Applied Indus. Materials Corp.*, 492 F.3d at 138 (discussing arbitrator's duty to investigate potential conflicts of interest or "disclose his reasons for believing there might be a conflict and his intention not to investigate").  But again, any challenge based on this disclosure was waived.  Around May 11, 2017, Miller was put on notice that Rolnick or a family member owned some UBS securities at some point.  (Dkt. No. 6-6 at 4, 7; Dkt. No 18 ¶ 19.)  But Miller did not request more information about this disclosure or raise it as a basis for replacing Rolnick on the panel.  Because Miller had "knowledge of facts possibly indicating bias or partiality on the part of" Rolnick prior to the arbitration hearing, but Miller chose to "remain silent," he cannot now "object to the award of the arbitrators on that ground."  *LGC Holdings, Inc.*, 238 F. Supp. 3d at 467 (quoting *AAOT Foreign Econ. Ass'n*, 139 F.3d at 982).

Accordingly, because the first two allegedly deficient disclosures identified are not suggestive of any bias on the part of the arbitrators, and because any objection premised on the third disclosure was waived, the Court declines to vacate the arbitration award under § 10(a)(2).

### B. Cross-Petition to Confirm Arbitration Award

UBS cross-petitions this Court to confirm the arbitration award. FAA § 9 provides that a court "must grant such an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of" the FAA. 9 U.S.C. § 9. "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." *L'Objet, LLC v. Samy D. Ltd.*, No. 11 Civ. 3856, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011). Accordingly, because Miller has failed to establish grounds for vacating, modifying, or correcting the arbitration award, the Court grants UBS's petition to confirm the award.

### C. Attorney's Fees and Costs

UBS also seeks attorney's fees and costs in connection with this action. (Dkt. No. 17 at 18–19.) But UBS has not specified the amount of fees or costs sought, nor has it provided documentation to substantiate the request. And Miller does not address the issue of fees and costs in his response to UBS's petition to confirm the arbitration award. (*See* Dkt. Nos. 23, 25.) The Court therefore defers consideration of this request until UBS files a motion for attorney's fees and costs supported by the proper documentation.

### IV. Conclusion

For the foregoing reasons, Miller's petition to vacate arbitration is DENIED, and UBS's cross-petition to confirm the arbitration award is GRANTED.

The Clerk of Court is directed to enter judgment in favor of Respondents UBS Financial Services Inc. and UBS Credit Corp. and against Petitioner Michael E. Miller in the amount of $166,624.00.

UBS may submit any motion for attorney's fees and costs within 30 days of the date of this Opinion and Order, and Miller shall have two weeks thereafter to respond to any such motion.

The Clerk of Court is also directed to close the motion at Docket Number 2 and to close this case.

SO ORDERED.

Dated: May 6, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge